IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELO GLEAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00571 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| RUDD MEDICAL SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the Court is a *pro se* complaint for alleged violation of civil rights pursuant to 42

U.S.C. § 1983 (Doc. No. 1), filed by Angelo Gleaves, a pretrial detainee confined in the Rutherford

County Adult Detention Center in Murfreesboro, Tennessee. Plaintiff has also filed an application

to proceed *in forma pauperis* (IFP) (Doc. No. 2), which the Court will grant by Order entered

contemporaneously herewith. The complaint is now before the Court for an initial review pursuant

to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C.

§ 1997e.

## INITIAL REVIEW OF THE COMPLAINT

### I.      PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is

facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief. Similarly, § 1915A provides

that the Court shall conduct an initial review of any prisoner complaint against a governmental

entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects

listed in § 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, *pro se* pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II.     SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III.     ALLEGATIONS AND CLAIMS

Plaintiff sues the Rutherford County Adult Detention Center (RCADC) and Rudd Medical Services, claiming that his Eighth Amendment rights were violated. (Doc. No. 1 at 2, 3.) He alleges that on April 19, 2019, he was injured when his bunk collapsed due to the bottom of the frame being improperly secured to the wall. (*Id.* at 9.) He subsequently complained of his back and head hurting, and of experiencing dizziness and lightheadedness. (*Id.* at 9, 10.)

On May 20, 2019, after returning to the RCADC following a court date, Plaintiff was seen by a nurse and placed in a holding cell, where he subsequently complained of back pain to the guards. (*Id.* at 13–14.) When the guards denied Plaintiff's request to be moved into a regular cell but offered him the opportunity to see a nurse, Plaintiff declined because the nurse he had seen upon arriving back from court had told him he could not get pain medication until the next morning at 7:00 a.m. (*Id.* at 14.) Plaintiff continued to complain of back pain and insisted that he be moved from the holding cell, which had only a concrete slab to rest upon, to a regular cell. (*Id.* at 14–15.) When the guards denied this request, Plaintiff asked to speak to someone higher in authority, and was told to put his hands behind his back. (*Id.* at 15.) When he asked why, Plaintiff was "immediately roughly thrown against the wall, arms twisted behind [his] back, and a knee was shoved into the center of [his] back, all while [he] was on [his] knees." (*Id.*) He was handcuffed, walked to a different holding cell, and was told to go into the cell and kneel in front of the concrete slab. (*Id.*) After telling the guards that his back injury prevented him from kneeling, he was "forcefully slammed onto [his] stomach onto the concrete slab into a kneeling position, and the

handcuffs were removed." (*Id.*) The two guards continued to apply pressure to his back for 10-15 seconds, then left the cell. (*Id.* at 16.)

On May 31, 2019, Plaintiff experienced spasms and "locking up" in his back while walking a flight of stairs, resulting in him falling down approximately eight stairs. (*Id.* at 16.) Medical personnel responded to this scene and transported Plaintiff on a stretcher to the emergency room in Smyrna, Tennessee. (*Id.*) A week earlier, Plaintiff had spoken to someone in the medical department about obtaining a pass to be permanently housed in a bottom-tier cell so that he did not have to climb stairs, but "[t]he medical staff refused to write [him] a bottom-tier slip." (*Id.* at 17.) He had been informed by jail staff that "the only way to stay permanently housed on the bottom tier is through the medical staff's (Rudd Medical Services) approval." (*Id.*)

On June 27, 2019, a cell shakedown was performed at RCADC, and when Plaintiff returned to his cell, his legal mail and other legal papers had been rifled through outside of his presence. (*Id.* at 18.) He alleges that in response to his grievance about this matter, he "was told that it is policy to search everything for contraband, even legal mail." (*Id.* at 24.)

Plaintiff explains his claims against the two Defendants by stating that RCADC "displayed breach of duty by not protecting [him] from unreasonable risks [of] . . . becoming hurt due to a bunk falling, and . . . by falling down stairs in pod 2C," while Rudd Medical Services "displayed medical malpractice" when "[t]he company could have easily written [him] a bottom-tier pass to protect [him] from the unreasonable risk of . . . eventually falling down the stairs," but did not. (*Id.* at 5.) As relief in this Court, Plaintiff seeks compensatory damages for his pain and suffering, and punitive damages for the harassment and taunting he endured while hurt. (*Id.* at 19.)

IV.     ANALYSIS

A.      Deliberate Indifference to Serious Medical Needs

"Pretrial detainees . . . are protected [from punishment] by the Fourteenth Amendment's Due Process Clause," *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016), under which they have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners. *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005). "Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution." *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 105 (1976)) (internal quotation marks omitted). "For this reason, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983," *id.*, whether the prisoner is a convict proceeding under the Eighth Amendment or a detainee proceeding under the Fourteenth Amendment.

However, Plaintiff has failed to state a viable deliberate-indifference claim against either of the two Defendants. To begin with, it is well settled that "the Rutherford County Jail or Adult Detention Center, like any other jail or workhouse, is a place; it is not a 'person' that can be sued under 42 U.S.C. § 1983." *Tucker v. Salandy*, No. 3:17-cv-00671, 2017 WL 2438401, at *2 (M.D. Tenn. June 6, 2017); *see also Bonds v. Daley*, No. 18-5666, 2019 WL 2647494, at *2 (6th Cir. May 17, 2019). Even if the Court were to broadly construe this claim against the RCADC as an attempt to hold Rutherford County itself liable, he does not allege any harm that was caused by a policy of the county. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (to hold municipality liable, plaintiff must allege a direct causal link between a policy or custom of the

municipality and the alleged constitutional violation). Plaintiff therefore fails to state a deliberate-indifference claim against the RCADC.

Plaintiff also fails to allege any actionable deprivation of rights by Rudd Medical Services. A private entity that contracts with a municipality to provide medical services at a jail is carrying out a traditional state function, and so may be held liable under § 1983. *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018). However, "[l]ike a municipality, a government contractor cannot be held liable on a *respondeat superior* theory, but [only] for a policy or custom of that private contractor." *Id.* (quoting *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)) (internal quotation marks omitted).

Plaintiff alleges that his injuries from his bunk falling off the wall caused the dizziness and lightheadedness which resulted in him "falling out" six days later, on April 25, 2019. (Doc. No. 1 at 9.) He alleges that when the medical staff responded to this incident on April 25, they "took my vitals, and blood pressure and cleared me to go back up the stairs in the pod to my cell; they said I needed rest." (*Id.* at 10.) The back spasms that caused his fall down the stairs did not occur until May 31, 2019. (*Id.* at 10–16.) Plaintiff appears to allege that prior to this fall he had been temporarily moved to the lower tier "by the DC in regards to [his] injuries and inability to safely go up and down the stairs." (*Id.* at 17.) He alleges that he was moved back to the upper tier after another court date two weeks prior to his fall, and that one week prior to his fall he had spoken to "someone [i]n the medical" department about obtaining "a bottom-tier pass" but "[t]he medical staff refused to write [him] a bottom-tier slip." (*Id.* at 16–17.) He claims that he is left with injuries for which he "did not receive the fullest extent of pain relief medication, nor therapy." (*Id.* at 7.)

Even construed in the light most favorable to Plaintiff, these allegations do not support a colorable claim that Rudd Medical Services, in refusing (through its employees) to prescribe him

permanent placement on the bottom tier of the jail prior to his fall down the stairs, was acting pursuant to a corporate policy or in a way that was deliberately indifferent to his medical needs rather than merely negligent. *See Winkler*, 893 F.3d at 891 ("A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice."). Indeed, Plaintiff characterizes the denial of this request as "show[ing] negligence and malpractice," and states that after his fall and resulting injuries he was given a bottom-tier cell "even with[out] Rudd Medical Services writing [him] a bottom-tier pass." (Doc. No. 1 at 23.) But prior to his fall, at the time he requested bottom-tier placement, Plaintiff was physically capable of traveling to attend "out-of-county court" and had apparently been navigating the stairs without incident (though not necessarily with ease) while housed on the upper tier. (Doc. No. 1 at 17.) And again, he does not allege that the denial of this request was based on any corporate policy. Accordingly, Defendant Rudd Medical Service's refusal "to protect [Plaintiff] from the unreasonable risk of . . . eventually falling down the stairs" (Doc. No. 1 at 5), while unfortunate in hindsight, did not violate Plaintiff's constitutional rights.

B.      Other Alleged Violations

Plaintiff's allegations concerning being taunted by guards at the RCADC (*id.* at 9–10, 18) and spending a few days in holding cells that were dirty or full of trash (*id.* at 11–12) fail to state any viable claim against either Defendant. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (holding that verbal harassment did not rise to level of punishment proscribed by 8th Amendment); *cf. Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (finding that four days' exposure to an overflowed toilet, without any alleged consequences of such exposure, "amounts to a de minimis imposition and thus does not implicate constitutional concerns," whether analyzed under 8th or 14th Amendment jurisprudence).

Finally, Plaintiff fails to state a claim against RCADC based on the allegation that, on June 27, 2019, when he returned to his cell after a "shakedown" search of all cells in his pod that lasted about an hour, "[a]ll of [his] legal mail was outside of the manila envelope that [h]as 'Tennessee Middle District Court' on it," and all of his "lawsuit and other legal papers had been searched and thrown all over [his] bed, without [him] being present." (Doc. No. 1 at 18.) Although Plaintiff reports being told that this handling of his legal materials was pursuant to RCADC policy "to search everything for contraband, even legal mail" (*id.* at 24), the Court finds no viable constitutional claim arising from the execution of this policy as alleged here.

The Supreme Court has recognized that: (1) prison officials must have "[u]nfettered access" to inmates' cells, as well as the element of surprise involved in random searches, if they are to ferret out contraband and maintain safe conditions of confinement, *Hudson v. Palmer*, 468 U.S. 517, 527 (1984); and (2) cell searches such as the one alleged here, where "all inmates are cleared of the residential units, and a team of guards searches each room," do not violate the privacy rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 555–57 (1979). While the Sixth Circuit has held that "mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise," *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003), Plaintiff does not allege that any previously unopened legal mail was opened during the search. Rather, he alleges that legal mail previously received and stored in a manila envelope was removed from that envelope in the search for contraband, and then left scattered on his bed. He does not allege that the search was retaliatory or for the purpose of harassment, that any legal materials were confiscated, or that his ability to litigate his case was in any way hampered by the search. *Cf. Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (finding that allegations of such motives and consequences were sufficient to bring "actions that might not otherwise be

offensive to the Constitution, such as the search itself or the confiscation and destruction of [legal and] nonlegal materials" within the scope of the Constitution) (quoting *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir.1986)). He furthermore fails to seek any relief particular to this claim. (*See* Doc. No. 1 at 19.)

For all these reasons, the Court finds that Plaintiff fails to state a colorable claim related to the search of his legal materials. *See Kalka v. Megathlin*, 10 F. Supp. 2d 1117, 1121 (D. Ariz. 1998), *aff'd*, 188 F.3d 513 (9th Cir. 1999) (finding that, because inmates did not allege any injury and did not have any expectation of privacy in their cells or right to be present during search, "[t]he search may include looking through personal property including legal materials") (citing *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996)); *Schenck v. Edwards*, 921 F. Supp. 679, 689 (E.D. Wash. 1996) ("Based on *Hudson* and *Mitchell*, the plaintiff does not have a constitutional claim pertaining to the inspection of legal papers outside of his presence during the course of a cell search.").

## CONCLUSION

Plaintiff certainly alleges that he was subjected to callous conduct that caused him, at the very least, medical symptoms and discomfort. But he does not allege facts sufficient to state a claim upon which relief may be granted against either of the named Defendants. His complaint must therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order will enter.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE